UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

Dkt. No.:

-------------------------------------------------------------------X

DYVON NIEVES,

**COMPLAINT**

Plaintiff,

-against-

**JURY TRIAL
DEMAND**

NATASHA DENONA MAKEUP and YOSI COHEN, in
his Individual and Official Capacities,

**ECF CASE**

Defendants.

-------------------------------------------------------------------X

Plaintiff DYVON NIEVES ("Plaintiff" or "Mr. Nieves"), by and through his attorneys,

JOSEPH & NORINSBERG, LLC, as and for his Complaint against Defendants NATASHA

DENONA MAKEUP ("NDM") and YOSI COHEN, in his Individual and Official Capacities

("Cohen") (collectively, "Defendants"), respectfully alleges upon knowledge as to himself and his

own actions, and upon information and belief as to all other matters, as follows:

## NATURE OF THE CASE

1.      This is a civil action seeking monetary damages arising from Defendants' violations

of Plaintiff's rights under: (i) Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq.

("Title VII"); (ii) the New York State Human Rights Law, N.Y. Exec. Law § 296 et seq. (the

"NYSHRL"); (iii) the New York City Human Rights Law, N.Y.C. Admin. Code § 8-107 et seq.

(the "NYCHRL"); (iv) the aiding and abetting provisions of the NYSHRL and the NYCHRL; (v)

New York common law; and, (vi) Texas common law.

2.      Plaintiff brings this action to remedy Defendants' sexual harassment, sexual

assault, hostile work environment, discrimination based on sex and sexual orientation, retaliations,

and Defendants' knowing ratification of unlawful conduct.

**PRELIMINARY STATEMENT**

3.    This case arises from Defendants deliberate refusal to address an incident of sexual assault and battery committed by a supervisory employee and Defendants' subsequent retaliation against Plaintiff for opposing unlawful conduct.

4.    On April 24, 2025, Plaintiff—an openly gay man—was sexually assaulted and battered by his direct supervisor, Mitchell Richardson ("Richardson"), during a company-sponsored work trip. Richardson used his supervisory authority to engage in unwelcome physical contact while explicitly linking career advancement to that conduct.

5.    Plaintiff promptly reported the assault and battery to management.  Rather than investigate or protect Plaintiff, Defendants dismissed the complaint.  Specifically, Defendant Cohen, Owner and Co-Founder of Defendant NDM, laughed when informed of the assault and battery and stated, "well they are all gay men, I am not surprised."

6.    Defendants took no action to discipline Richardson, separate him from Plaintiff, or remediate the hostile work environment.  Defendants' inaction ratified the assault and signaled that discriminatory misconduct would be tolerated.

7.    After months of enduring a hostile and unsafe workplace, Plaintiff again sought intervention by requesting a meeting with Defendant Cohen.  Two days later, Defendants terminated Plaintiff's employment without explanation.

8.    Defendants' conduct subjected Plaintiff to sexual harassment, sexual assault, a hostile work environment, discrimination based on sex and sexual orientation, and retaliation, causing severe emotional and economic harm. Plaintiff now seeks to hold Defendants accountable under federal, state, and city law.

## JURY DEMAND

9.      Plaintiff respectfully demands a trial by jury of all issues in this matter pursuant to Fed R. Civ. P. 38(b).

## JURISDICTION AND VENUE

10.     This Court has subject matter jurisdiction over Plaintiff's Title VII claims pursuant to 28 U.S.C. §§ 1331 and 1343, and 42 U.S.C. § 2000e-5(f)(3).

11.     This Court has supplemental jurisdiction over Plaintiff's claims under the NYSHRL, the NYCHRL, New York State law, and Texas State law pursuant to 28 U.S.C. § 1367(a), as those claims arise out of the same case or controversy as Plaintiff's Title VII claims.

12.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to Plaintiff's claims occurred in this District, Defendant NDM maintains its principal place of business in this District, and upon information and belief, Defendant Cohen resides in this District.

13.     Plaintiff filed a timely Charge of Discrimination with the United States Equal Employment Opportunity Commission (the "EEOC") on or about December 10, 2025, Charge No. 520-2026-02015, alleging discrimination based on sex, sexual orientation, and retaliation.

14.     Prior to bringing this action, Plaintiff exhausted all required administrative remedies as on or about January 15, 2026, he received a Notice of Right to Sue from the EEOC.

## PARTIES

15.     Plaintiff is an individual who, at all relevant times, was a resident of the State of New York.

16. At all times relevant herein, Mr. Nieves was an "employee" of Defendant NDM and is a "person" within the meaning of, and entitled to the protections of Title VII, the NYSHRL, and the NYCHRL.

17. At all relevant times, Defendant NDM was and is a domestic corporation organized and existing under the laws of the State of New York, with its principal place of business located at 39 East 30th Street, New York, New York 10016.

18. At all times relevant herein, Defendant NDM controlled the terms and conditions of Plaintiff's employment and was and is an "employer" within the meaning of Title VII, the NYSHRL, and the NYCHRL.

19. Upon information and belief, at all relevant times, Richardson, was and is the Global Education Director of Defendant NDM.

20. At all times relevant herein, Richardson acted as an agent of Defendant NDM, supervised Plaintiff, and exercised control over the terms and conditions of Plaintiff's employment.

21. Upon information and belief, at all relevant times, Defendant Cohen, was and is the Owner of Defendant NDM.

22. At all times relevant herein, Defendant Cohen acted as an agent of Defendant NDM, supervised Mr. Nieves, and exercised control over the terms and conditions of Mr. Nieves' employment.

23. As such, Defendant Cohen is individually liable as an "employer" under the NYSHRL, the NYCHRL, and/or for aiding, abetting, inciting, compelling, or coercing the unlawful discriminatory and retaliatory acts alleged herein.

24. Defendant Cohen, acting in his individual capacity and under color of state law, directly participated in and personally directed the discriminatory conduct against Plaintiff.

25. As the owner of Defendant NDM, Defendant Cohen exercised supervisory authority over Plaintiff and is individually liable under Title VII for his personal participation in the discriminatory acts.

## FACTUAL ALLEGATIONS

### *Plaintiff's Employment & Sexual Assault and Quid Pro Quo Harassment*

26. Plaintiff began working for Defendant NDM in or about April 2022 as a makeup artist and field education trainer, earning $27 per hour.

27. For over three years, Plaintiff performed his duties diligently and professionally and met Defendants' legitimate performance expectations.

28. On April 24, 2025, during a company-sponsored work event in Austin, Texas, Plaintiff lost his hotel room key and was unable to obtain a replacement.

29. Richardson, Defendant NDM's Global Education Director and Plaintiff's superior, invited Plaintiff to his hotel room, which was directly across the hall from Plaintiff's room. Plaintiff had only previously interacted with Richardson virtually prior to this trip.

30. The incident occurred after approximately 3:00 a.m. While discussing Plaintiff's career goals and future launches, Richardson stated that he would speak to Defendant Cohen, the Co-Founder of Defendant NDM, about Plaintiff's future growth with Defendant NDM.

31. During this interaction, Richardson climbed on top of Plaintiff, kissed his forehead and cheek, and made complimentary remarks while referencing Plaintiff's career advancement. The contact was intentional, unwelcome, and offensive. Plaintiff was shocked and did not consent to this physical contact.

5

32.     After Plaintiff briefly went to the bathroom and returned, Richardson again climbed on top of Plaintiff, kissed his forehead, grabbed his waist, and positioned himself on Plaintiff's body while continuing to reference career advancement and future opportunities at Defendant NDM.

33.     Plaintiff did not consent to this conduct and found it unwelcome and offensive.

***Plaintiff Reports the Harassment and Defendants' Discriminatory Response***

34.     On April 27, 2025, three days after the assault, Richardson sent Plaintiff a text message stating: "I remember our conversation and I told you I was going to bat for you so I'm going to bring this up and at the very least plant some seeds and give my suggestions and my approval for your growth to be doing amazing things with us, more amazing than you are doing now." A true and correct copy of this message is annexed hereto as Exhibit "1".

35.     Richardson's statements and text message explicitly linked Plaintiff's career advancement to the encounter in his hotel room and constitute *quid pro quo* sexual harassment.

***Plaintiff Reports the Assault and Defendants Fail to Act***

36.     On April 25, 2025, the day after the assault, Plaintiff disclosed the incident to his direct manager, Amanda Hernandez ("Ms. Hernandez"), in her hotel room. A true and correct copy of Ms. Hernandez's declaration is annexed hereto as Exhibit "2".

37.     During that conversation, Plaintiff was visibly upset and shocked by what had occurred.

38.     For the remainder of the trip, Ms. Hernandez stayed close to Plaintiff to ensure that he was not left alone with Richardson again.

39.     On or about April 28, 2025, Ms. Hernandez reported Richardson's conduct to Defendant Cohen and made clear that Plaintiff had not consented to Richardson's actions.

40.     Rather than initiating an investigation or taking corrective action, Defendant Cohen laughed and stated, "well they are all gay men, I am not surprised."

41.     Defendant Cohen's statement referenced Plaintiff's sexual orientation and reflected discriminatory animus toward gay men.

42.     Upon information and belief, Defendants failed to conduct any meaningful investigation into Plaintiff's complaint and failed to discipline Richardson.

***Plaintiff Opposes Discrimination and Raises Workplace Concerns***

43.     On September 6, 2025, Plaintiff requested a meeting with Defendant Cohen via text message to address ongoing workplace issues, writing: "I just want to message asking if you would be in office Monday. I feel like we should talk as I am trying to communicate things on email with Sandra and it's not working so I believe an in person meeting would be best."  A true and correct copy of this text exchange is annexed hereto as Exhibit "3".

44.     Defendant Cohen initially responded, "I will be," but on September 8, 2025, when Plaintiff followed up, Defendant Cohen responded: "Today is not ok. I have not schedule[d] an appointment with you for today . . . I will be in touch this week. Thank you."

45.     On September 6, 2025, Sandra Kraft ("Ms. Kraft"), acting on behalf of Defendants, emailed Plaintiff stating, "[l]eadership will address you directly regarding next steps." A true and correct copy of this email is annexed hereto as Exhibit 4.

46.     These communications provided Defendants' leadership with advance notice of Plaintiff's concerns regarding harassment and discrimination.

***Defendants' Retaliatory Termination***

47.     On September 8, 2025, two days after Plaintiff requested a meeting to address workplace concerns, Defendants terminated Plaintiff's employment.

48.    Plaintiff was terminated via email from Ms. Kraft while he was in the middle of his work shift.

49.    The termination email stated that Plaintiff's employment was terminated immediately, that he should not contact employees or managers, and that he should not return to the office.  No reason for the termination was provided.

50.    When Plaintiff asked whether his termination was related to his recent communications raising concerns about his position, Defendant Cohen responded: "Good morning Dyvon. At this point I do not think any further communication will be productive."

51.    Immediately prior to his termination, Plaintiff had successfully completed field training for the Sephora client on September 4 and 5, 2025, demonstrating satisfactory job performance.

52.    The close temporal proximity between Plaintiff's protected activity and his termination supports a causal connection between his complaints and the adverse employment action.

## CAUSES OF ACTION

**AS AND FOR A FIRST CAUSE OF ACTION AGAINST ALL DEFENDANTS**
*(Sexual Harassment in Violation of Title VII)*

53.    Plaintiff repeats and realleges each and every allegation contained in the preceding paragraphs as if fully set forth herein.

54.    Title VII prohibits discrimination in employment because of sex, including sexual harassment.

55.    Sexual harassment under Title VII includes both quid pro quo harassment and harassment that creates a hostile work environment.

56.     Richardson, acting as Plaintiff's supervisor and exercising supervisory authority over Plaintiff's work and career opportunities, subjected Plaintiff to unwelcome sexual conduct and unwanted physical contact, including climbing on top of Plaintiff, kissing Plaintiff's forehead and cheek, and grabbing Plaintiff's waist without Plaintiff's consent.

57.     Richardson tied Plaintiff's career advancement to the encounter and to Plaintiff's "growth" at Defendant NDM, including by stating he would "go to bat" for Plaintiff and advocate for Plaintiff's "growth," thereby linking employment benefits to Plaintiff's submission to unwelcome sexual conduct.

58.     Richardson's conduct constituted *quid pro quo* sexual harassment.

59.     Richardson's conduct was also sufficiently severe to create an objectively and subjectively hostile work environment and to alter the terms and conditions of Plaintiff's employment.

60.     Defendant NDM is vicariously liable for the sexual harassment perpetrated by Plaintiff's supervisor.

61.     To the extent the harassment culminated in a tangible employment action, including Plaintiff's termination, Defendant NDM is liable and not entitled to an affirmative defense.

62.     In the alternative, Defendant NDM is liable because it had actual notice of Richardson's misconduct through Plaintiff's report to Ms. Hernandez and Ms. Hernandez's report to Defendant Cohen and failed to take prompt and effective remedial action.

63.     As a direct and proximate result of Defendant NDM's unlawful conduct, Plaintiff has suffered and continues to suffer damages, including lost wages, lost benefits, emotional distress, and other compensatory damages.

64.     Defendant NDM's conduct was willful and/or undertaken with reckless indifference to Plaintiff's federally protected rights, warranting punitive damages.

**AS AND FOR A SECOND CAUSE OF ACTION AGAINST ALL DEFENDANTS**
*(Gender and Sex Discrimination in Violation of Title VII)*

65.     Plaintiff repeats and realleges each and every allegation contained in the preceding paragraphs as if fully set forth herein.

66.     Title VII prohibits discrimination in employment on the basis of sex.

67.     Plaintiff was subjected to sex-based harassment and adverse treatment, including being subjected to unwelcome sexual conduct by his supervisor and being treated adversely after complaining about that misconduct.

68.     Upon receiving notice of Plaintiff's complaint, Defendant Cohen dismissed the report and made the statement, "well they are all gay men, I am not surprised," reflecting discriminatory bias and a refusal to treat Plaintiff's complaint as a serious workplace violation.

69.     Upon information and belief, Defendant NDM's response to Plaintiff's complaint—including its failure to investigate and its subsequent adverse actions—was motivated, at least in part, by sex-based considerations and sex-based stereotypes.

70.     Defendant NDM thereafter subjected Plaintiff to an adverse employment action, including termination.

71.     As a direct and proximate result of Defendant NDM's unlawful discrimination, Plaintiff has suffered and continues to suffer damages, including lost wages, lost benefits, emotional distress, and other compensatory damages.

72.     Defendant NDM's conduct was willful and/or undertaken with reckless indifference to Plaintiff's federally protected rights, warranting punitive damages.

10

**AS AND FOR A THIRD CAUSE OF ACTION AGAINST ALL DEFENDANTS**
*(Sexual Orientation Discrimination in Violation of Title VII)*

73.     Plaintiff repeats and realleges each and every allegation contained in the preceding paragraphs as if fully set forth herein.

74.     Title VII prohibits discrimination in employment on the basis of sex, including sexual orientation.

75.     Plaintiff is an openly gay man.

76.     When Ms. Hernandez reported Richardson's sexual assault of Plaintiff to Defendant Cohen, Defendant Cohen laughed and stated, "well they are all gay men, I am not surprised."

77.     This statement explicitly references Plaintiff's sexual orientation and demonstrates discriminatory animus against gay men.

78.     Defendant Cohen's discriminatory remark, combined with his complete failure to investigate the harassment or take any corrective action, demonstrates that Plaintiff's sexual orientation was a motivating factor in the adverse treatment he received.

79.     Upon information and belief, Plaintiff's sexual orientation was a motivating factor in Defendants' decision to terminate his employment.

80.     As a direct and proximate result of Defendants' sexual orientation discrimination, Plaintiff has suffered and continues to suffer damages including lost wages, lost benefits, emotional distress, and other compensatory damages.

81.     Defendants' conduct was willful, malicious, and undertaken with reckless indifference to Plaintiff's federally protected rights, warranting an award of punitive damages.

11

**AS AND FOR A FOURTH CAUSE OF ACTION AGAINST ALL DEFENDANTS**
*(Retaliation in Violation of Title VII)*

82.    Plaintiff repeats and realleges each and every allegation contained in the preceding paragraphs as if fully set forth herein.

83.    Title VII prohibits retaliation against employees who oppose unlawful employment practices.

84.    Plaintiff engaged in protected activity when he reported Richardson's sexual harassment to his manager, Ms. Hernandez, on or about April 25, 2025.

85.    Plaintiff engaged in protected activity when he requested a meeting with Defendant Cohen on September 6, 2025, to address ongoing workplace issues related to the sexual harassment and discriminatory treatment.

86.    Defendants were aware of Plaintiff's protected activity, as it was reported directly to Ms. Hernandez and Defendant Cohen.

87.    Defendants took adverse employment action against Plaintiff by terminating his employment on September 8, 2025.

88.    A causal connection exists between Plaintiff's protected activity and his termination, as evidenced by the temporal proximity of only two days between Plaintiff's request for a meeting to discuss workplace issues and his termination.

89.    As a direct and proximate result of Defendants' unlawful retaliation, Plaintiff has suffered and continues to suffer damages including lost wages, lost benefits, emotional distress, and other compensatory damages.

90.    Defendants' conduct was willful, malicious, and undertaken with reckless indifference to Plaintiff's federally protected rights, warranting an award of punitive damages.

12

**AS AND FOR A FIFTH CAUSE OF ACTION AGAINST ALL DEFENDANTS**
*(Sexual Harassment and Aiding and Abetting Sexual Harassment in Violation of the NYSHRL)*

91.    Plaintiff repeats and realleges each and every allegation contained in the preceding paragraphs as if fully set forth herein.

92.    The NYSHRL prohibits employers from discriminating against employees on the basis of sex, including through sexual harassment.

93.    Richardson, acting as Plaintiff's supervisor, subjected Plaintiff to unwelcome sexual contact and conditioned promises of career advancement on such contact, constituting *quid pro quo* sexual harassment.

94.    Richardson's severe sexual harassment created a hostile work environment that was sufficiently severe to alter the conditions of Plaintiff's employment.

95.    Defendant NDM is strictly liable for Richardson's sexual harassment because Richardson acted as Plaintiff's supervisor with authority delegated to him by the employer.

96.    Defendant Cohen's conduct demonstrates that Defendant NDM condoned, encouraged, or approved of the sexual harassment.

97.    Defendant Cohen personally participated in and/or aided and abetted the unlawful sexual harassment.

98.    As a direct and proximate result of Defendants' sexual harassment, Plaintiff has suffered and continues to suffer damages including lost wages, lost benefits, emotional distress, and other compensatory damages.

99.    Defendants' conduct was willful, wanton, and malicious, warranting an award of punitive damages.

13

**AS AND FOR A SIXTH CAUSE OF ACTION AGAINST ALL DEFENDANTS**
*(Gender and Sex Discrimination and Aiding and Abetting*
*Gender and Sex Discrimination in Violation of the NYSHRL)*

100.    Plaintiff repeats and realleges each and every allegation contained in the preceding paragraphs as if fully set forth herein.

101.    The NYSHRL prohibits employers from discriminating against employees on the basis of sex.

102.    Defendants subjected Plaintiff to unwelcome sexual contact, discriminatory treatment, and termination because of his sex.

103.    Defendant Cohen's discriminatory statement and failure to investigate demonstrates that sex was a motivating factor in the adverse employment actions taken against Plaintiff.

104.    Defendant Cohen personally participated in and/or aided and abetted the unlawful sex discrimination.

105.    As a direct and proximate result of Defendants' sex discrimination, Plaintiff has suffered and continues to suffer damages including lost wages, lost benefits, emotional distress, and other compensatory damages.

106.    Defendants' conduct was willful, wanton, and malicious, warranting an award of punitive damages.

**AS AND FOR A SEVENTH CAUSE OF ACTION AGAINST ALL DEFENDANTS**
*(Sexual Orientation Discrimination and Aiding and Abetting*
*Sexual Orientation Discrimination in Violation of the NYSHRL)*

107.    Plaintiff repeats and realleges each and every allegation contained in the preceding paragraphs as if fully set forth herein.

14

108.    The NYSHRL prohibits employers from discriminating against employees on the basis of sexual orientation.

109.    Plaintiff is an openly gay man.

110.    When Ms. Hernandez reported Richardson's sexual assault of Plaintiff to Defendant Cohen, Defendant Cohen laughed and stated, "well they are all gay men, I am not surprised."

111.    This statement explicitly evidences discriminatory animus based on sexual orientation.

112.    Defendant Cohen's failure to investigate the harassment, combined with his discriminatory remarks, demonstrates that Plaintiff's sexual orientation was a motivating factor in the adverse treatment he received, including his termination.

113.    Defendant Cohen personally participated in and/or aided and abetted the unlawful sexual orientation discrimination.

114.    As a direct and proximate result of Defendants' sexual orientation discrimination, Plaintiff has suffered and continues to suffer damages including lost wages, lost benefits, emotional distress, and other compensatory damages.

115.    Defendants' conduct was willful, wanton, and malicious, warranting an award of punitive damages.

**AS AND FOR AN EIGHTH CAUSE OF ACTION AGAINST ALL DEFENDANTS**
*(Retaliation and Aiding and Abetting Retaliation in Violation of the NYSHRL)*

116.    Plaintiff repeats and realleges each and every allegation contained in the preceding paragraphs as if fully set forth herein.

117.    The NYSHRL prohibits employers from retaliating against employees who oppose unlawful discriminatory practices.

15

118. Plaintiff engaged in protected activity by reporting Richardson's sexual harassment to his manager and by requesting a meeting with Defendant Cohen to address workplace issues.

119. Defendants were aware of Plaintiff's protected activity.

120. Defendants took adverse employment action against Plaintiff by terminating his employment on September 8, 2025.

121. A causal connection exists between Plaintiff's protected activity and his termination, as evidenced by the temporal proximity of two days and the pretextual nature of the termination.

122. Defendant Cohen personally participated in and/or aided and abetted the unlawful retaliation.

123. As a direct and proximate result of Defendants' unlawful retaliation, Plaintiff has suffered and continues to suffer damages including lost wages, lost benefits, emotional distress, and other compensatory damages.

124. Defendants' conduct was willful, wanton, and malicious, warranting an award of punitive damages.

**AS AND FOR A NINTH CAUSE OF ACTION AGAINST ALL DEFENDANTS**
*(Sexual Harassment and Aiding and Abetting Sexual Harassment in Violation of the NYCHRL)*

125. Plaintiff repeats and realleges each and every allegation contained in the preceding paragraphs as if fully set forth herein.

126. The NYCHRL prohibits employers from discriminating against employees on the basis of gender, including through sexual harassment.

127. Under the NYCHRL, Plaintiff need only show that he was treated less well because of his gender or was subjected to unwanted gender-based conduct.

128. Richardson subjected Plaintiff to unwanted gender-based conduct by getting on top of Plaintiff, kissing him, grabbing his waist, and making career promises conditioned on the unwelcome sexual contact.

129. This conduct constitutes both quid pro quo harassment and hostile work environment harassment under the NYCHRL.

130. Defendant NDM is strictly liable for sexual harassment committed by Richardson, a supervisor and manager.

131. Defendant Cohen, with supervisory and managerial authority, condoned the harassment by dismissing Plaintiff's complaint with discriminatory remarks and failing to investigate or take corrective action.

132. Defendant Cohen personally participated in and/or aided and abetted the unlawful sexual harassment.

133. As a direct and proximate result of Defendants' sexual harassment, Plaintiff has suffered and continues to suffer damages including lost wages, lost benefits, emotional distress, and other compensatory damages.

134. Defendants' conduct was willful, wanton, and malicious, warranting an award of punitive damages.

**AS AND FOR A TENTH CAUSE OF ACTION AGAINST ALL DEFENDANTS**
*(Gender and Sex Discrimination and Aiding and Abetting
Gender and Sex Discrimination in Violation of the NYCHRL)*

135. Plaintiff repeats and realleges each and every allegation contained in the preceding paragraphs as if fully set forth herein.

136. The NYCHRL prohibits employers from discriminating against employees on the basis of gender.

17

137. The NYCHRL is to be construed broadly in favor of discrimination plaintiffs to accomplish its uniquely broad and remedial purposes.

138. Defendants subjected Plaintiff to unwelcome sexual contact, discriminatory treatment, and termination because of his gender.

139. Defendant Cohen's discriminatory remarks and failure to investigate demonstrate that gender was a motivating factor in the adverse employment actions taken against Plaintiff.

140. Defendant Cohen personally participated in and/or aided and abetted the unlawful gender discrimination.

141. As a direct and proximate result of Defendants' gender discrimination, Plaintiff has suffered and continues to suffer damages including lost wages, lost benefits, emotional distress, and other compensatory damages.

142. Defendants' conduct was willful, wanton, and malicious, warranting an award of punitive damages.

**AS AND FOR AN ELEVENTH CAUSE OF ACTION AGAINST ALL DEFENDANTS**
*(Sexual Orientation Discrimination and Aiding and Abetting*
*Sexual Orientation Discrimination in Violation of the NYCHRL)*

143. Plaintiff repeats and realleges each and every allegation contained in the preceding paragraphs as if fully set forth herein.

144. The NYCHRL prohibits employers from discriminating against employees on the basis of sexual orientation.

145. Plaintiff is an openly gay man.

146. Defendant Cohen's statement—"well they are all gay men, I am not surprised"— explicitly references Plaintiff's sexual orientation and demonstrates discriminatory animus.

18

147. Defendant Cohen's discriminatory remark, made in response to a report of sexual harassment, demonstrates that Plaintiff's sexual orientation was a motivating factor in Defendants' failure to protect him and their decision to terminate his employment.

148. Defendant Cohen personally participated in and/or aided and abetted the unlawful sexual orientation discrimination.

149. As a direct and proximate result of Defendants' sexual orientation discrimination, Plaintiff has suffered and continues to suffer damages including lost wages, lost benefits, emotional distress, and other compensatory damages.

150. Defendants' conduct was willful, wanton, and malicious, warranting an award of punitive damages.

**AS AND FOR A TWELFTH CAUSE OF ACTION AGAINST ALL DEFENDANTS**
*(Retaliation and Aiding and Abetting Retaliation in Violation of the NYCHRL)*

151. Plaintiff repeats and realleges each and every allegation contained in the preceding paragraphs as if fully set forth herein.

152. The NYCHRL prohibits employers from retaliating against employees who oppose unlawful discriminatory practices.

153. Plaintiff engaged in protected activity by reporting sexual harassment and by requesting a meeting to address workplace discrimination issues.

154. Defendants were aware of Plaintiff's protected activity.

155. Defendants took adverse employment action against Plaintiff by terminating his employment on September 8, 2025, only two days after Plaintiff requested a meeting to address workplace issues.

156. Defendants' termination of Plaintiff was wholly or partially in retaliation for his opposition to unlawful discriminatory practices.

157.    Defendant Cohen personally participated in and/or aided and abetted the unlawful retaliation.

158.    As a direct and proximate result of Defendants' unlawful retaliation, Plaintiff has suffered and continues to suffer damages including lost wages, lost benefits, emotional distress, and other compensatory damages.

159.    Defendants' conduct was willful, wanton, and malicious, warranting an award of punitive damages.

## AS AND FOR A THIRTEENTH CAUSE OF ACTION AGAINST DEFENDANT NDM
### (Assault under Texas Common Law)

160.    Plaintiff repeats and realleges each and every allegation contained in the preceding paragraphs as if fully set forth herein.

161.    On April 24, 2025, in Austin, Texas, Richardson, acting within the scope of his employment with Defendant NDM and in furtherance of Defendant NDM's business, engaged in conduct that placed Plaintiff in reasonable apprehension and fear of imminent harmful or offensive contact.

162.    Richardson, acting within the scope of his employment with Defendant NDM and in furtherance of Defendant NDM's business, intentionally approached Plaintiff, positioned himself over Plaintiff's body, and engaged in conduct that caused Plaintiff to reasonably anticipate unwanted physical contact.

163.    Richardson's conduct, which was within the scope of his employment with Defendant NDM and in furtherance of Defendant NDM's business, was intentional and created reasonable apprehension in Plaintiff of imminent harmful and offensive contact.

20

164.    Plaintiff did not consent to Richardson's conduct, which was within the scope of his employment with Defendant NDM and in furtherance of Defendant NDM's business,  and was shocked and uncomfortable.

165.    Plaintiff was placed in immediate fear and apprehension of unwanted sexual contact by Richardson.

166.    Furthermore, on April 24, 2025, in Austin, Texas, Richardson, acting within the scope of his employment with Defendant NDM and in furtherance of Defendant NDM's business, intentionally or knowingly caused physical contact with Plaintiff when he got on top of Plaintiff's body, kissed Plaintiff's forehead and cheek, grabbed Plaintiff's waist, and adjusted himself to sit on Plaintiff's body.

167.    At the time of the aforementioned contact, which was within the scope of his employment with Defendant NDM and in furtherance of Defendant NDM's business, Richardson knew or reasonably should have believed that Plaintiff would regard the contact as offensive or provocative as Plaintiff did not consent to this physical contact, was shocked by Richardson's actions, and made clear he did not want this physical contact.

168.    The next day, on April 25, 2025, Plaintiff reported the incident to his manager Ms. Hernandez, who confirmed that Plaintiff, "was visibly upset and shocked by what had happened."

169.    As a direct and proximate result of Richardson's assault, Plaintiff has suffered and continues to suffer severe emotional distress, humiliation, anxiety, depression, and other psychological injuries.

170.    Richardson's conduct, which was within the scope of his employment with Defendant NDM and in furtherance of Defendant NDM's business, was willful, wanton,

21

malicious, and undertaken with conscious disregard for Plaintiff's rights, warranting an award of punitive damages.

## AS AND FOR A FOURTEENTH CAUSE
## OF ACTION AGAINST DEFENDANT NDM
*(Battery under Texas Common Law)*

171.    Plaintiff repeats and realleges each and every allegation contained in the preceding paragraphs as if fully set forth herein.

172.    On April 24, 2025, in Austin, Texas, Richardson, acting within the scope of his employment with Defendant NDM and in furtherance of Defendant NDM's business, intentionally or knowingly caused harmful or offensive physical contact with Plaintiff when he got on top of Plaintiff's body, kissed Plaintiff's forehead and cheek, grabbed Plaintiff's waist, and adjusted himself to sit on Plaintiff's body, all without Plaintiff's consent.

173.    After Plaintiff got up to use the bathroom during the encounter, Richardson, acting within the scope of his employment with Defendant NDM and in furtherance of Defendant NDM's business,  again got on top of Plaintiff, kissed Plaintiff's forehead, grabbed Plaintiff's waist, and adjusted himself to sit on Plaintiff's body.

174.    Plaintiff did not consent to this physical contact, was shocked by Richardson's actions, , which were within the scope of his employment with Defendant NDM and in furtherance of Defendant NDM's business, and made clear he did not want this physical contact.

175.    Plaintiff knew that Richardson was already having sexual relations with another employee and was particularly uncomfortable with Richardson's unwanted advances.

176.    Richardson's physical contact with Plaintiff, which was within the scope of his employment with Defendant NDM and in furtherance of Defendant NDM's business, was intentional, harmful, offensive, and non-consensual.

177. The next day, on April 25, 2025, Plaintiff reported the battery to his manager Ms. Hernandez, who confirmed that Plaintiff, "was visibly upset and shocked by what had happened" and stayed close to Plaintiff for the remainder of the trip to ensure he was not left alone with Richardson again.

178. As a direct and proximate result of Richardson's battery, which was within the scope of his employment with Defendant NDM and in furtherance of Defendant NDM's business, Plaintiff has suffered and continues to suffer severe emotional distress, humiliation, anxiety, depression, and other psychological injuries.

179. As a direct and proximate result of Richardson's battery, Plaintiff has suffered economic damages.

180. Richardson's conduct, which was within the scope of his employment with Defendant NDM and in furtherance of Defendant NDM's business, was willful, wanton, malicious, and undertaken with conscious disregard for Plaintiff's rights, warranting an award of punitive damages.

**AS AND FOR A FIFTEENTH CAUSE OF ACTION AGAINST ALL DEFENDANTS**
*(Aiding and Abetting Assault)*

181. Plaintiff repeats and realleges each and every allegation contained in the preceding paragraphs as if fully set forth herein.

182. On or about April 28, 2025, Defendant Cohen, as the Owner and Co-Founder of Defendant NDM, received actual knowledge of Richardson's assault of Plaintiff when Ms. Hernandez reported Richardson's conduct to Defendant Cohen.

183. Ms. Hernandez made clear to Defendant Cohen, as the Owner and Co-Founder of Defendant NDM, that Plaintiff had not consented to Richardson's actions and that Richardson had placed Plaintiff in fear and apprehension of unwanted sexual contact.

184. Ms. Hernandez also made clear to Defendant Cohen, as the Owner and Co-Founder of Defendant NDM, that Richardson intentionally or knowingly caused physical contact with Plaintiff when he got on top of Plaintiff's body, kissed Plaintiff's forehead and cheek, grabbed Plaintiff's waist, and adjusted himself to sit on Plaintiff's body.  At that time, Ms. Hernandez also informed Defendant Cohen, as the Owner and Co-Founder of Defendant NDM, that Plaintiff regarded the contact from Richardson as offensive or provocative as Plaintiff did not consent to the physical contact, was shocked by Richardson's actions, and made clear he did not want the physical contact.

185. Rather than taking appropriate action, Defendant Cohen, as the Owner and Co-Founder of Defendant NDM, laughed and dismissed the assault, stating, "well they are all gay men, I am not surprised."

186. Upon information and belief, Defendant Cohen, as the Owner and Co-Founder of Defendant NDM, took no action whatsoever to investigate the assault, discipline Richardson, or protect Plaintiff from further harm.

187. Defendant Cohen's failure to investigate, his dismissive response, and his complete inaction constituted substantial assistance to Richardson by enabling Richardson to continue his employment with full authority over Plaintiff without consequence.

188. Defendant Cohen's conduct, as the Owner and Co-Founder of Defendant NDM, emboldened Richardson and created an environment where Richardson's assault was condoned and ratified by Defendant NDM's Co-Founder and leadership.

189. Defendant Cohen's conscious decision to take no action despite actual knowledge of the assault directly contributed to Plaintiff's ongoing harm, including the continued hostile work environment and emotional distress.

24

190. Defendant Cohen's inaction and dismissive response to the assault demonstrated conscious disregard for Plaintiff's safety and wellbeing.

191. As a direct and proximate result of Defendant Cohen's aiding and abetting of Richardson's assault, Plaintiff has suffered and continues to suffer severe emotional distress, humiliation, anxiety, depression, economic losses, and other damages.

192. Defendant Cohen's conduct was willful, wanton, malicious, and undertaken with conscious disregard for Plaintiff's rights and safety, warranting an award of punitive damages.

## AS AND FOR A SIXTEENTH CAUSE OF ACTION AGAINST DEFENDANT COHEN
*(Aiding and Abetting Battery)*

193. Plaintiff repeats and realleges each and every allegation contained in the preceding paragraphs as if fully set forth herein.

194. On or about April 28, 2025, Defendant Cohen, as the Owner and Co-Founder of Defendant NDM, received actual knowledge of Richardson's battery of Plaintiff when Ms. Hernandez reported Richardson's conduct to Defendant Cohen.

195. Ms. Hernandez specifically informed Defendant Cohen, as the Owner and Co-Founder of Defendant NDM, that Richardson had gotten on top of Plaintiff, kissed Plaintiff, and made unwanted physical contact with Plaintiff without Plaintiff's consent.

196. Ms. Hernandez made clear to Defendant Cohen, as the Owner and Co-Founder of Defendant NDM, that Plaintiff had not consented to Richardson's actions and that Richardson had committed battery against Plaintiff.

197. Ms. Hernandez also made clear to Defendant Cohen, as the Owner and Co-Founder of Defendant NDM, that Richardson intentionally or knowingly caused harmful or offensive physical contact with Plaintiff when he got on top of Plaintiff's body, kissed Plaintiff's forehead

25

and cheek, grabbed Plaintiff's waist, and adjusted himself to sit on Plaintiff's body, all without Plaintiff's consent.

198. Rather than taking appropriate action, Defendant Cohen, as the Owner and Co-Founder of Defendant NDM, laughed and dismissed the battery, stating, "well they are all gay men, I am not surprised."

199. Upon information and belief, Defendant Cohen, as the Owner and Co-Founder of Defendant NDM, took no action whatsoever to investigate the battery, discipline Richardson, separate Richardson from Plaintiff, or protect Plaintiff from further harm.

200. Defendant Cohen's failure to investigate, his dismissive response, and his complete inaction constituted substantial assistance to Richardson by enabling Richardson to continue his employment with full supervisory authority over Plaintiff without consequence for his battery.

201. Defendant Cohen's conduct sent a clear message to Richardson and others that sexual battery against employees would be tolerated and condoned by Defendant NDM's leadership.

202. Defendant Cohen's conscious decision to take no action despite actual knowledge of the battery directly contributed to Plaintiff's ongoing harm, including the hostile work environment, emotional distress, and ultimate retaliatory termination.

203. Defendant Cohen's inaction and dismissive response to the battery demonstrated conscious disregard for Plaintiff's physical safety, bodily integrity, and wellbeing.

204. As a direct and proximate result of Defendant Cohen's aiding and abetting of Richardson's battery, Plaintiff has suffered and continues to suffer severe emotional distress, humiliation, anxiety, depression, economic losses, and other damages.

205.    Defendant Cohen's conduct was willful, wanton, malicious, and undertaken with conscious disregard for Plaintiff's rights, physical safety, and wellbeing, warranting an award of punitive damages.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff demands judgment against Defendants, jointly and severally, as follows:

A. A judgment declaring that the practices complained of herein are unlawful and in violation of Title VIII, the New York State Human Rights Law, the New York City Human Rights Law,  New York State Law, and Texas Common Law;

B. Preliminary and permanent injunctions against Defendants and their officers, owners, agents, successors, employees, representatives, and any and all persons acting in concert with them, from engaging in each of the unlawful discriminatory and retaliatory practices, policies, customs, and usages set forth herein;

C. An award of damages against all Defendants, jointly and severally, including individual liability damages against Defendant Cohen in his personal capacities, in an amount to be determined at trial, plus pre-judgment and post-judgment interest, to compensate Plaintiff for all monetary and/or economic damages, including but not limited to, front pay, back pay, lost wages, lost benefits, and other compensation Plaintiff would have received but for Defendants' unlawful conduct;

D. An award of damages in an amount to be determined at trial, plus pre-judgment and post-judgment interest, to compensate Plaintiff for all non-monetary and/or compensatory damages, including, but not limited to, compensation for his severe mental anguish, emotional distress, humiliation, depression, embarrassment, stress

and anxiety, loss of self-esteem, self-confidence, personal dignity, harm to his professional and personal reputations, and emotional pain and suffering;

E. An award of punitive damages under Title VII, the NYCHRL, and other applicable laws in an amount to be determined at trial, sufficient to punish Defendants for their malicious, willful, and wanton conduct and to deter future unlawful conduct;

F. An award of costs and disbursements that Plaintiff has incurred in this action, as well as his reasonable attorneys' fees and expert witness fees to the fullest extent permitted by law; and,

G. Such other and further relief as this Court may deem just and proper.

Dated:  New York, New York
        March 17, 2026

Yours, etc.,

**JOSEPH & NORINSBERG, LLC**

By: _____
    John J. Meehan, Esq.
    Jesse R. Mautner, Esq
    *Attorneys for Plaintiff*
    825 Third Avenue, Suite 2100
    New York, New York 10022
    Tel. No.: (212) 227-5700
    Fax No.: (212) 656-1889
    jmeehan@norinsberglaw.com
    jesse@employeesjustice.com

28